*552 Affirmed in part and vacated and remanded in part by published opinion. Judge KING wrote the opinion, in which Judge BEATY joined. Judge NIEMEYER wrote a separate opinion concurring in part and dissenting in part. Judge BEATY wrote a separate concurring opinion.
OPINION
KING, Circuit Judge:
The five appellants in these consolidated appeals, Robert Brooks, Winifred Sparks (“W.Sparks”), William Witherspoon, Ver-nard Sparks, Jr. (“V.Sparks”), and Ver-nard Mathis (collectively, the “Defendants”), were each convicted by jury for offenses arising from a drug trafficking scheme in South Carolina. Specifically, the Defendants were each convicted of a single count of conspiracy to distribute less than 500 grams of cocaine and 50 grams or more of cocaine base (“crack”), in violation of 21 U.S.C. § 846 (the “Count 1 crack conspiracy”); V. Sparks and W. Sparks were convicted of possession with intent to distribute 5 grams or more of crack, in violation of 21 U.S.C. § 841(a)(1) (the “Count 10 substantive offense”); and W. Sparks was also convicted of possession with intent to distribute an unspecified quantity of crack, again in violation of § 841(a)(1) (the “Count 4 substantive offense”).
The Defendants, who were indicted and tried together, present multiple challenges to their convictions and sentences. In particular, Mathis and Witherspoon contend that the trial court’s instructions eontra-vened the principles of United States v. Collins, 415 F.3d 304 (4th Cir.2005), by failing to instruct the jury that it was obliged, in connection with the Count 1 crack conspiracy offense, to determine the threshold drug quantities attributable to each individual defendant on trial.[1] As explained below, we agree that the court erred in failing to give the appropriate Collins instruction and that, as to defendant Mathis, such error warrants relief. In so ruling, we reject the Government’s post-argument contention that the Supreme Court’s decision in United States v. Booker, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), overruled our decision in Collins.
The Defendants also pursue other contentions of error involving, inter alia, evidence admitted at their trial and sentencing hearings, the denial of judgment of acquittal, and the calculation of their advisory Sentencing Guidelines ranges. We reject these contentions of error and affirm the convictions and sentences of Brooks, Witherspoon, V. Sparks, and W. Sparks. We vacate Mathis’s sentence on the Count 1 crack conspiracy and remand for resentencing under 21 U.S.C. § 841(b)(1)(C).
I.
A.
On March 19, 2003, a twenty-two count superseding indictment (the “Indictment”) was returned in the District of South Carolina, charging the Defendants with the Count 1 crack conspiracy,[2] as well as con *553 spiracy to use and carry firearms during and in relation to drug trafficking crimes, in violation of 18 U.S.C. § 924(o) (the “Count 2 firearms conspiracy”). These conspiracies were both alleged to have begun by at least January 1994 and to have ended in March 2003. V. Sparks and W. Sparks were charged with the Count 10 substantive offense; and W. Sparks was also charged with the Count 4 substantive offense.[3]
The Defendants pleaded not guilty and them trial commenced on July 7, 2003. At trial, the Government’s evidence was, in substance, that the Defendants — four of whom were full- or half-brothers, while the fifth (Mathis) was a cousin — had participated in a major drug distribution scheme in and near Lancaster, South Carolina.[4] This scheme centered on a residence known as “The Circle,” on Willow Oak Circle in Lancaster. The Circle was owned by Vernard Sparks, Sr., who was not charged in the Indictment. When law enforcement officers executed a search warrant at The Circle in August 2000, they discovered 51.3 grams of crack and several firearms. They also found $5000 in cash in a bedroom belonging to W. Sparks, who lived at The Circle. In addition to evidence relating to drug activities at The Circle, other evidence reflected that officers had, in August 1998, stopped a vehicle that W. Sparks was driving, also containing two other occupants. The officers found a .25 caliber pistol in W. Sparks’s back pocket and discovered a bag containing approximately .62 grams of crack under a tire on the driver’s side of the car. Because there were no tire tracks on the drugs, the officers concluded that the drugs had been thrown from the car by W. Sparks.
At the close of the prosecution’s case-in-chief, the trial court granted judgment of acquittal to the Defendants on the Count 2 fire-arms conspiracy. Before the court instructed the jury on the remaining three charges, the Defendants objected to the instructions on the Count 1 crack conspiracy, contending that the jury was obliged to make a finding regarding the drug quantities that were attributable to each individual conspiracy defendant.[5] The court overruled the objection, however, and instead instructed the jury to the contrary, i.e., that it was obliged to find “not the amount a single defendant may have been *554 involved with, but rather the amount of controlled substances involved in the conspiracy as a whole.” Supp. J.A. 47.[6]
The jury returned its verdict on August 6, 2003, finding the Defendants guilty of the Count 1 crack conspiracy. The verdict also found W. Sparks and V. Sparks guilty of the Count 10 substantive offense, for possession with intent to distribute 5 grams or more of crack, and W. Sparks guilty of the Count 4 substantive offense, for possession with intent to distribute an unspecified quantity of crack. The verdict form included an interrogatory relating to the Count 1 crack conspiracy, requiring the jury to complete the following by checking the box next to one of the specified drug quantities: “We unanimously find that the amount and type of drugs involved in the conspiracy as a whole were as follows.... ” Verdict Form, August 6, 2003. In response, the jury checked the boxes corresponding to “50 grams or more” of crack and “less than 500 grams” of cocaine.[7]
B.
The district court conducted sentencing hearings for the Defendants between May 31 and June 7, 2005, at which it made findings of fact and calculated their advisory Sentencing Guidelines ranges. In addition to criminal history determinations, the court found that: (1) Brooks was responsible for 2001 grams of crack and had possessed a firearm during the conspiracy; (2) Mathis was responsible for 3249 grams of crack and had possessed a firearm during the conspiracy; (3) W. Sparks was responsible for 194 grams of crack and had possessed a firearm during the conspiracy; (4) Witherspoon was responsible for 2200 grams of crack; and (5) V. Sparks was responsible for 1714 grams of crack and had possessed a firearm during the conspiracy. After calculating the advisory Guidelines ranges and considering the factors set forth in 18 U.S.C. § 3553(a), the court sentenced each of the Defendants, except W. Sparks, to 360 months’ imprisonment. W. Sparks was sentenced to 200 months.[8] The court ordered Mathis’s sentence to run consecutive to five concurrent life sentences he was already serving in South Carolina state prison. In imposing Mathis’s consecutive sentence, the district court opined that “[i]t is my understanding they normally parole state inmates who are serving life sentences reasonably soon or as soon as possible if they know that they are going to go on and serve a lengthy sentence in the federal system.” J.A. 704. The sentences imposed were each within the Defendants’ advisory Guidelines ranges — 188 to 235 months for W. Sparks, 324 to 405 months for Wither-spoon, and 360 months to life for the other defendants.
Each of the Defendants has appealed. Two of the Defendants, Mathis and With-erspoon, contend that the court contra *555 vened the principles of United States v. Collins by failing to have the jury determine the threshold drug quantity attributable to each Defendant on trial, in order to establish their respective statutory ranges under 21 U.S.C. § 841(b).[9] In addition, all of the Defendants, save W. Sparks, contend that the district court violated their Sixth Amendment right to a jury trial by finding facts on drug quantity and firearms possession that led to the enhancement of their sentences, and defendants Brooks, W. Sparks, and V. Sparks contend that the court improperly enhanced their sentences based on its finding of possession of a firearm, even though they had been acquitted of the Count 2 firearms conspiracy; W. Sparks contends that the court erred in denying his motion for judgment of acquittal; Witherspoon contends that the court erred in permitting the jury to consider evidence of events that occurred prior to January 1994; V. Sparks contends that the court erred in permitting a witness to testify at sentencing to clarify his trial testimony; and Witherspoon and V. Sparks assert that, in connection with their 360 month sentences, the court incorrectly calculated their criminal history points. We address these contentions in turn, beginning with the Collins claim pursued by Mathis and Witherspoon.[10]
II.
We first address the contention, pursued on appeal by Mathis and Wither-spoon only, that United States v. Collins, 415 F.3d 304 (4th Cir.2005), required the jury to “determine beyond a reasonable doubt the quantity of drugs attributable to [each defendant] individually, and not the *556 overall conspiracy,” and that the district court thus erred in failing to instruct the jury to make such determinations. Br. of Appellants 29. As a preliminary matter, although this issue was preserved as to all the Defendants, see supra note 5, Brooks, V. Sparks, and W. Sparks have abandoned it on appeal by failing to raise it in their opening brief.[11] Furthermore, any Collins error as to Witherspoon has been rendered harmless by his admission on appeal that he is responsible for 50 grams or more of crack.[12] In his appellate brief, Witherspoon asserts that the “only issue as to drug weight which was before the jury was whether Witherspoon conspired to sell more than 50 grams of crack” and, accordingly, he “submits that he should only be held accountable for that amount of drugs based on the jury’s verdict.” Br. of Appellants 40-41. Thus, our analysis of this contention focuses only on the relief to which Mathis is entitled on the Collins issue.[13]
A.
Pursuant to 21 U.S.C. § 846, “any person who ... conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the ... conspiracy.” The Count 1 crack conspiracy charged the Defendants under § 846 with *557 conspiracy to violate 21 U.S.C. § 841(a)(1) (making it an offense to, inter alia, intentionally distribute or possess with intent to distribute a controlled substance). Because the object of the Count 1 crack conspiracy was a violation of § 841(a), the Defendants are, pursuant to § 846, subject to the penalties prescribed in § 841(b). As outlined above, § 841(b) creates a three-part graduated penalty scheme for drug distribution offenses, premised on the type and quantity of the drugs involved. See supra note 9. Accordingly, the drug quantity attributed to a particular defendant dictates the § 841(b) penalty subsection that is applicable to such defendant, and controls the statutory sentencing range to which that defendant is exposed. In 2001, our en banc Court determined in United States v. Promise that “specific threshold drug quantities must be treated as elements of aggravated drug trafficking offenses, rather than as mere sentencing factors.” 255 F.3d 150, 156 (4th Cir.2001) (en banc), cert. denied, 535 U.S. 1098, 122 S.Ct. 2296, 152 L.Ed.2d 1053 (2002).[14]
B.
In the present case, the jury attributed 50 grams or more of crack to the Count 1 crack conspiracy as a whole, after being instructed that “the amount of controlled substances you will need to determine ... is not the amount a single defendant may have been involved with, but rather the amount of controlled substances involved in the conspiracy as a whole.” Supp. J.A. 47. Thus, absent an individualized determination of drug quantity, the verdict (attributing 50 grams or more of crack to the “conspiracy as a whole”) exposed Mathis to a statutory maximum sentence of life, and a mandatory minimum sentence of 10 years. 21 U.S.C. § 841(b)(1)(A).
Four years thereafter, in 2005 in Collins, “we addressed the issue of whether a defendant found guilty of a conspiracy to violate § 841(a) should be sentenced under § 841(b) by considering the amount of drugs distributed by the entire conspiracy,” or whether, on the other hand, the statutory sentencing range specified by § 841(b) depends upon the quantity of drugs attributable to the individual defendant. See United States v. Foster, 507 F.3d 233, 250 (4th Cir.2007) (summarizing Collins ).[15] The Collins decision ruled that a jury must utilize the principles outlined in Pinkerton v. United States, 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946), to determine the specific quantity of drugs “attributable to” each individual defendant for the purpose of setting a threshold drug quantity under § 841(b). Collins, 415 F.3d at 314.[16]
*558 In Collins, as in this case, the defendant appealed his conviction for conspiracy to distribute 50 grams or more of crack, after the trial court failed to instruct the jury to determine the quantity of drugs attributable to each individual defendant. See 415 F.3d at 311-12. In evaluating the contention that such failure to instruct was erroneous, we first examined our 1993 ruling in United States v. Irvin, 2 F.3d 72, 77 (4th Cir.1993), that “the most reasonable interpretation of the relevant statutory provisions [in §§ 841(b) and 846] requires a sentencing court to assess the quantity of narcotics attributable to each coconspirator by relying on the principles set forth in Pinkerton.” Accordingly, we recognized in Collins that, under the Irvin precedent, “the subsection of § 841(b) applicable to an individual defendant is determined by a consideration of the amount of narcotics attributable to that defendant.” Collins, 415 F.3d at 313.
When Irvin was decided, a trial court was obliged to find by a preponderance of the evidence the drug quantity attributable to a particular defendant in order to fix the § 841(b) threshold drug quantity. Collins, 415 F.3d at 313 (citing Irvin, 2 F.3d at 76). Irvin, however, was modified in 2000 by the Supreme Court’s decision in Apprendi v. New Jersey, holding that “[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.” 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). Applying Apprendi to § 841(b), we determined in 2001, in Promise, that a jury, rather than a trial court, must determine the threshold drug quantity used to establish a defendant’s statutory sentencing range under § 841(b). See Promise, 255 F.3d at 156 (“Apprendi dictates that in order to authorize the imposition of a sentence exceeding the maximum allowable without a jury finding of a specific threshold drug quantity, the specific threshold quantity must be treated as an element of an aggravated drug trafficking offense, i.e., charged in the indictment and proved to the jury beyond a reasonable doubt.”). As we recognized in Collins, although Apprendi modified the fact-finder aspect of Irvin, effectively replacing the words “a district court” with “the jury,” and requiring proof beyond a reasonable doubt, “Irvin’s holding that Pinkerton principles should be used to determine, for sentencing purposes, the amount of narcotics attributable to any one individual in a conspiracy, remains good law.” Collins, 415 F.3d 314. Thus, under Collins, a trial court is obliged to “instruct a jury to use Pinkerton principles” to determine the quantity of drugs attributable to each individual defendant involved in a drug conspiracy. Id. “In other words, in order for the statutory máximums and mandatory mínimums of § 841(b) to apply in a drug conspiracy case, the jury must determine that the threshold drug amount was reasonably foreseeable to the individual defendant.” Foster, 507 F.3d at 250-51 (finding Collins error where jury failed to determine individualized quantity of crack attributable to conspiracy defendant for penalty purposes of § 841(b), but declining, on plain error review, to award relief).
Just as in Collins and Foster, the jury in this case was not asked to determine the threshold quantity of crack attributable to each individual defendant on trial, for the purpose of determining the applicable penalty subsection of § 841(b). The jury instead determined only the amount of crack attributable to the “conspiracy as a whole.” Accordingly, the trial *559 court erred in declining the request that it give an instruction requiring the jury to make the essential threshold determination of drug quantity, and thus establish the § 841(b) penalty range for each individual conspiracy defendant.[17]
C.
The Collins legal principles remain sound, and, as explained below, we reject the Government’s post-argument assertion that the Supreme Court’s decision in United States v. Booker, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), renders them inoperative. In its initial briefing in this case, the Government sought to distinguish this case from Collins and maintained that any Collins error that occurred was harmless. At oral argument, the Government conceded that a Collins error had occurred in the trial of the Defendants, in that the court failed to instruct the jury to apply Pinkerton principles to determine the quantities of crack attributable to each individual defendant, for the statutory penalty purposes of § 841(b). The Government maintained, however, that we should nevertheless affirm the Defendants’ sentences because the Collins error was harmless.[18] After an oral argument discussion concerning the possible impact of Booker on the Collins principles, the parties submitted post-argument supplemental briefs. In its post-argument submission, the Government, for the first time, espoused the view that the Collins principles had been overruled by Booker.
The thrust of the Government’s post-argument contention appears to be that “Booker supercedes Collins because Collins was decided prior to Booker and did not contemplate the advisory sentencing guidelines regime set forth in Booker in which the district court judge is tasked with determining the amount of drugs attributable to each defendant in a drug conspiracy for sentencing purposes.” *560 Supp. Br. of Appellee 2.[19] The Government’s post-argument position, however, ignores the fact that Collins addressed and explained how a jury is to determine the threshold quantity of drugs attributable to an individual drug conspiracy defendant for the purpose of establishing the applicable statutory sentencing range under § 841(b). Booker, on the other hand, is solely a Sentencing Guidelines case. The Collins decision does not relate in any manner or way to the calculation or consideration of a defendant’s Guidelines range, but instead explains and instructs how the applicable penalty subsection of § 841(b) is to be determined for an individual conspiracy defendant.
In Booker, the Court held that the mandatory nature of the Sentencing Guidelines contravened the Sixth Amendment’s jury trial guarantee. See 543 U.S. at 232-36, 125 S.Ct. 738. In so ruling, the Court reaffirmed its holding in Apprendi that “[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt.” Id. at 244, 125 S.Ct. 738. In order to remedy the Sixth Amendment defect of the Guidelines, the Booker Court excised the two provisions of the Sentencing Reform Act that made the Guidelines mandatory. Id. at 258-63, 125 S.Ct. 738 (severing and excising two provisions, 18 U.S.C. §§ 3553(b)(1) & 3742(e), that made Guidelines mandatory).
It is clear from Booker's express reaffirmance of Apprendi that for statutory penalty purposes the threshold quantity of drugs continues to be a fact that a jury must find beyond a reasonable doubt as to each individual defendant. As a result, a jury is still obligated, post-Booker, to apply Pinkerton principles to determine the threshold drug quantity attributable to each individual defendant convicted under § 846, for the purpose of establishing the applicable statutory range under § 841(b).[20]
D.
Because it was not properly instructed, this jury did not determine the statutory threshold quantities of crack at *561 tributable to each of the Defendants.[21] In the absence of a jury determination of this threshold quantity, or an admission by Mathis as to the drug quantity attributable to him, his sentence must fall within the default penalty subsection of § 841(b)(1)(C) — that is, a maximum of 20 years. See Promise, 255 F.3d at 156, 157 n. 7. Mathis’s sentence of 360 months (30 years), exceeds the 20 year maximum established by § 841(b)(1)(C). Because he was sentenced in excess of the applicable statutory range, the Collins error affected Mathis’s substantial rights and was not harmless. See Fed. Rule Crim. Pro. 52(a) (providing that “[a]ny error ... that does not affect substantial rights must be disregarded”); see also Foster, 507 F.3d at 251-52 (concluding that defendant’s substantial rights were affected by Collins error where sentence exceeded 20 year statutory maximum, but declining to exercise discretion to notice error under plain error review); Promise, 255 F.3d 160-61 (holding that sentence in excess of authorized statutory maximum to which defendant would not otherwise be subject affects his substantial rights). Accordingly, we vacate Mathis’s sentence and remand for resen-tencing under § 841(b)(1)(C).[22]
In so concluding, we reject the Government’s contention that any Collins error as to Mathis is harmless because his sentence in this case, imposed to run consecutive to five concurrent state terms of life imprisonment, will never be served. Under harmless error review, the Government “bears the burden of establishing that error was harmless.” United States v. Robinson, 460 F.3d 550, 557 (4th Cir.2006). In imposing Mathis’s consecutive sentence, the district court opined that “[i]t is my understanding they normally parole state inmates who are serving life sentences reasonably soon or as soon as possible if they know that they are going to go on and serve a lengthy sentence in the federal system.” J.A. 704. The Government has not presented any evidence to demonstrate that Mathis will never serve his federal sentence. Accordingly, it has failed to meet its burden in this regard, and we are thus unable to. conclude that the Collins error is harmless as to Mathis.
III.
A.
Turning to the other issues pursued in these appeals, the Defendants contend that the sentencing court’s factfinding with respect to certain aspects of their sentences denied them their Sixth Amendment right to a jury trial. Witherspoon, Mathis, V. Sparks, and Brooks specifically assert that the court committed constitutional error when it attributed drug quantities to them by a preponderance of the evidence. V. Sparks, W. Sparks, and Brooks additionally contend that the court erred in applying a sentencing enhancement for possession of a firearm to the calculation of their advisory Guidelines ranges. As explained below, we reject both contentions.
1.
As explained above, the Supreme Court’s decision in Booker rendered the Sentencing Guidelines advisory. United States v. Booker, 543 U.S. 220, 125 S.Ct. *562 738, 160 L.Ed.2d 621 (2005). In so ruling, Booker explicitly rejected an approach to sentencing that requires a jury to find every fact relevant to a particular sentence. As also explained heretofore, a sentencing court is entitled to find individualized drug quantities by a preponderance of the evidence, as part of its calculation of an advisory Guidelines range, see supra note 20, so long as its resulting sentence is within the relevant statutory range.
Consistent with the post-Booker sentencing scheme, the district court found that Brooks was individually responsible for 2001 grams of crack; Mathis for 3249 grams; Witherspoon for 2200 grams; and V. Sparks for 1714 grams. In addition, the court found that each defendant, save Witherspoon, had possessed a firearm in connection with the Count 1 crack conspiracy. After properly calculating the advisory Guidelines ranges of the Defendants on the basis of the foregoing facts, and after considering the 18 U.S.C. § 3553(a) sentencing factors, the court imposed sentences that fell within the applicable statutory ranges for Brooks, Witherspoon, V. Sparks, and W. Sparks.[23] As it turned out, the court also imposed sentences within the Defendants’ advisory Guidelines ranges — 188 to 235 months for W. Sparks, 324 to 405 months for Witherspoon, and 360 months to life for the other defendants. In these circumstances, we reject the contention of these four defendants that the court violated their Sixth Amendment rights by finding drug quantities by a preponderance of the evidence during the calculation of their advisory Guidelines ranges.
2.
Brooks, W. Sparks, and V. Sparks also contend on appeal that the district court improperly enhanced by two levels their advisory Guidelines ranges for their possession of a firearm during the Count 1 crack conspiracy. See USSG § 201.1(b)(1).[24] These defendants assert that, because the court granted judgment of acquittal on the Count 2 firearms conspiracy, it was foreclosed from finding as a sentencing fact that they had possessed a firearm in connection with the Count 1 crack conspiracy.
Due to the different standards of proof applicable to trials and sentencing proceedings, an acquittal “does not prevent the sentencing court from considering conduct underlying the acquitted charge, so long as that conduct has been proved by a preponderance of the evidence.” United States v. Watts, 519 U.S. 148, 157, 117 S.Ct. 633, 136 L.Ed.2d 554 (1997). The fact that the trial court, rather than the jury, acquitted Brooks, W. Sparks, and V. Sparks on the Count 2 firearms conspiracy is also of no moment. At sentencing, the court was plainly entitled to consider evidence relating to firearms possession, and at that stage the prosecution was required to prove any such possession only by a preponderance of the evidence, a less for *563 midable standard than that required for conviction. The evidence presented at trial and at the sentencing hearings of these defendants clearly supported the application of this enhancement to the calculation of their advisory Guidelines ranges. Accordingly, we also reject this contention of sentencing error.
B.
In an appellate contention pursued by W. Sparks, he contends that the district court erred in denying his post-trial motion for judgment of acquittal on the Count 1 crack conspiracy, and on the Counts 4 and 10 substantive offenses as well. We must sustain a guilty verdict that, viewing the evidence in the light most favorable to the prosecution, is supported by “substantial evidence.” United States v. Burgos, 94 F.3d 849, 862 (4th Cir.1996) (en banc) (quoting Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942)). We have defined “substantial evidence” as “evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant’s guilt beyond a reasonable doubt.” Id. Further, a reviewing court is not entitled to assess the credibility of witnesses, but rather “must assume that the jury resolved all contradictions ... in favor of the Government.” United States v. United Med. & Surgical Supply Corp., 989 F.2d 1390, 1402 (4th Cir.1993).
W. Sparks contends that several of the prosecution witnesses acknowledged that they had never engaged in any drug trafficking activity with him, nor did they ever observe him buying or selling drugs. Although W. Sparks may be correct as to the witnesses he specifies, he ignores the other compelling inculpatory evidence against him in the trial record, including evidence of the drugs and firearm recovered diming the 1998 stop of a car he was driving, and the drugs and firearms found during the August 2000 search of The Circle. Viewing the evidence in the light most favorable to the prosecution, there was substantial evidence to support the three convictions of W. Sparks, and the court did not err in declining to award him a judgment of acquittal.
C.
Next, Witherspoon contends, in an issue he alone pursues, that the district court erred in instructing the jury that it could consider evidence regarding events that occurred prior to January 1994, the time specified in the Indictment as the beginning of the Count 1 crack conspiracy. He asserts that, because the Indictment makes an explicit reference to January 1994, he was not on notice that evidence from the late 1980s and early 1990s might be used against him. We review a trial court’s evidentiary rulings for abuse of discretion. See United States v. Fulks, 454 F.3d 410, 434 (4th Cir.2006).
Under the applicable principles, the prosecution was required to prove the existence of the Count 1 crack conspiracy and Witherspoon’s joinder in that conspiracy during the time frame alleged in the Indictment — and the evidence did so. Thus, this is not a case where the Government’s evidence allowed a defendant to be convicted of a different conspiracy or offense than that alleged in the indictment, nor a situation where the indictment failed to put the defendant sufficiently on notice of the offense with which he was charged. Cf. United States v. Queen, 132 F.3d 991, 998-99 (4th Cir.1997). Put simply, the evidence relating to conspiratorial activities prior to 1994 was admissible and properly considered by the jury, and Wither-spoon was sufficiently on notice that it *564 could be used to establish the existence of the conspiracy alleged.
Thus, it is apparent that the primary flaw in Witherspoon’s contention on this point is that he misreads the Indictment. It is alleged therein that the Count 1 crack conspiracy began “at a time unknown to the Grand Jury, but beginning at least in January 1994.” J.A. 12 (emphasis added). When, as here, the date alleged in an indictment is not a substantive element of an offense, see United States v. Kimberlin, 18 F.3d 1156, 1159 (4th Cir.1994), and because this Indictment alleges that the conspiracy may have begun prior to January 1994, there is no basis for us to conclude that the court abused its discretion in admitting this evidence. This contention is thus also rejected.
D.
Next, V. Sparks contends that the district court erred in allowing a prosecution witness to testify at his sentencing hearing to clarify an ambiguity in the witness’s trial testimony relating to drug quantities. We find no abuse of discretion in the court’s decision to admit this evidence for sentencing purposes. See USSG § 6A1.3(a); United States v. Mabry, 953 F.2d 127, 133 (4th Cir.1991) (“[O]nce issues in the sentencing report are brought into dispute, both sides are then free to bring any relevant evidence to resolve the dispute at the sentencing hearing.”).
E.
1.
Finally, Witherspoon and V. Sparks contend that the district court incorrectly calculated their criminal histories. First, Witherspoon asserts that he should not have received an additional criminal history point, placing him in criminal history category IV, for a 1991 conviction for malicious injury to property, because that conviction was for a “minor offense or local ordinance violation” that should have been excluded from the criminal history calculation. Br. of Appellants 42. Section 4A1.2(c) of the Sentencing Guidelines provides for the exclusion of “local ordinance violations” from a criminal history calculation, but only if those violations are not also criminal offenses under state law. Witherspoon has failed to make such a showing. Moreover, the malicious injury to property offense is not excludable as an offense similar to the other excluda-ble offenses listed in section 4A1.2(c). See USSG § 4A1.2(c) (excluding, under specific circumstances, certain listed misdemeanor offenses and “offenses similar to them”). Even though Witherspoon was not sentenced to custody on his 1991 state conviction, that offense could nonetheless be properly considered as a sentencing factor for a subsequent federal offense. See Alabama v. Shelton, 535 U.S. 654, 663-66, 122 S.Ct. 1764, 152 L.Ed.2d 888 (2002); Nichols v. United States, 511 U.S. 738, 746-49, 114 S.Ct. 1921, 128 L.Ed.2d 745- (1994). We are thus unable to conclude that the court improperly attributed a criminal history point to Witherspoon for his 1991 conviction.[25]
2.
V. Sparks contends that the district court improperly assigned two criminal history points to him for engaging in relevant offense conduct while on probation for another conviction. In 1994, V. Sparks was convicted in state court on charges of resisting arrest and unlawfully *565 carrying a pistol. His sentence included a term of probation that expired on September 25, 1995. On September 6, 1995, before his probation expired, V. Sparks distributed crack, for which he was convicted in 1996 in state court. The district court concluded that the conduct of V. Sparks giving rise to his 1996 crack conviction in state court was relevant offense conduct to his Count 1 crack conspiracy conviction, and thus that two additional criminal history points were warranted under section 4Al.l(d) of the Guidelines.
V. Sparks asserts that the district court had no factual basis for its finding that the conduct underlying his 1996 crack conviction was relevant offense conduct, because the prosecution did not sufficiently connect the conviction conduct to the Count 1 crack conspiracy on which he was being sentenced. The court, however, heard the evidence at both trial and sentencing, and we are unable to say that it clearly erred in making the contested finding. See United States v. Allen, 446 F.3d 522, 527 (4th Cir.2006) (recognizing that we review for clear error trial court’s factual findings on sentencing enhancement). Accordingly, we find no grounds for disturbing V. Sparks’s sentence.[26]
IV.
Pursuant to the foregoing, we affirm the convictions and sentences of Brooks, With-erspoon, V. Sparks, and W. Sparks. We vacate Mathis’s sentence and remand for such resentencing proceedings as may be appropriate.

AFFIRMED IN PART AND VACATED AND REMANDED IN PART

. In Collins, we held, inter alia, that in order for a trial court to determine which of the three graduated penalty subsections of 21 U.S.C. § 841(b) applies to defendants convicted of a § 846 drug conspiracy, the jury must determine the threshold quantity of drugs attributable to each conspiracy defendant on trial. See 415 F.3d at 311-15.

. The Count 1 crack conspiracy alleges, in pertinent part, that the Defendants (along with others) "did knowingly and intentionally combine, conspire and agree ... to distribute *553 and to possess with intent to distribute five kilograms or more of cocaine and fifty grams or more of cocaine base, commonly known as 'crack' cocaine.... All in violation of Title 21, United States Code, Section 846.”

. The Defendants are only five of the fifteen defendants charged in the twenty-two count Indictment. The charges against the other defendants were independently disposed of and several of them testified at trial. The Defendants are named in Counts 1, 2, 4, and 10 only, and there is nothing before us relating to the balance of the Indictment.

. We recite the facts in the light most favorable to the Government, as the prevailing party at trial. See United States v. Bursey, 416 F.3d 301, 304 n. 1 (4th Cir.2005).

.Although counsel for Mathis articulated this objection, he did so on behalf of all the Defendants, pursuant to an agreement that objections made by any of the Defendants applied to all unless otherwise specified. No Defendant opted out of Mathis’s objection and, accordingly, it was preserved for each of them. Because Collins had not been decided at the time of the Defendants’ trial in 2003, the objection of Mathis's counsel to the instructions was based on the Supreme Court's decision in Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). The objection was premised on the principle that the court was required to instruct the jury to make individualized findings of drug quantities as to each conspiracy defendant. The objection was thus sufficient to preserve the Defendants’ Collins contention, and the Government does not contend otherwise.

. Citations herein to "J.A. -" refer to the contents of the Joint Appendix hied by the parties in this appeal. Citations to "Supp. J.A. -" refer to the Supplemental Joint Appendix.

. The verdict form also included an interrogatory relating to the Count 10 substantive offense. After finding W. Sparks and V. Sparks guilty of this offense, the jury was asked to determine the amount of crack that W. Sparks and V. Sparks possessed in relation thereto. For both defendants, the jury selected "5 grams or more, but less than 50 grams” of crack. Verdict Form, August 6, 2003.

.V. Sparks's total sentence of 360 months consists of concurrent sentences of 360 months as to both the Count 1 crack conspiracy and the Count 10 substantive offense. W. Sparks's total sentence of 200 months consists of concurrent sentences of 200 months on each the Count 1 crack conspiracy and the Counts 4 and 10 substantive offenses.

. As explained further below, 21 U.S.C. § 841(b), which sets forth the penalties for § 846 conspiracy offenses and for violations of § 841(a), establishes a graduated penalty scheme, premised on the type and quantity of drugs attributable to a particular defendant. A sentence exceeding the 20 year maximum specified in § 841(b)’s default provision, § 841(b)(1)(C), may be imposed only upon a finding that the offense .of conviction involved a specific threshold quantity of a listed controlled substance. There are three gradations of permissible penalties spelled out in § 841(b). Using crack as an example,
• If the offense involves 50 grams or more of crack, an individual shall be sentenced to not less than 10 years and not more than life, § 841(b)(1)(A);
• If the offense involves 5 grams or more of crack, an individual shall be sentenced to not less than 5 years and not more than 40 years, § 841(b)(1)(B); and
• Pursuant to the default provision of § 841(b), an individual who possesses with intent to distribute an unspecified quantity of crack is subject to imprisonment for up to 20 years, § 841(b)(1)(C).
As discussed further below, the threshold drug quantities in § 841(b) constitute elements of aggravated drug trafficking offenses, and. a defendant charged with conspiracy to distribute 50 grams or more of crack, in violation of §§ 846 and 841(b)(1)(A), can, if the evidence warrants, be convicted of one of the lesser included offenses of conspiring to violate § 841(b)(1)(B) or (b)(1)(C). See United States v. E.V., 500 F.3d 747, 750-51 (8th Cir.2007) (noting that defendant indicted for conspiracy to distribute in excess of 1000 kilograms of marijuana, in violation of §§ 846 and 841(b)(1)(A), pleaded to lesser included offense of conspiracy to distribute 700 pounds of marijuana in violation of §§ 846 and 841(b)(1)(B)); United States v. Martinez, 430 F.3d 317, 340 (6th Cir.2005) (concluding that where indictment alleged greater quantities than juiy found to have been proven beyond reasonable doubt, resulting conviction was not variance or constructive amendment because defendant was "merely convicted of a lesser-included offense”).

. Mathis also maintains on appeal that the district court abused its discretion in designating his 360 month federal sentence to run consecutive to the five concurrent life sentences he is presently serving in the South Carolina penal system. We need not reach this issue, however, because, as explained below, we vacate his sentence in this case and remand for resentencing.

. In their post-argument supplemental brief, the Defendants assert that "all defendants ... join in the exception to any sentence imposed on them secured in violation of the Sixth Amendment.” Supp. Br. of Appellants 8. This assertion is insufficient to avoid our conclusion that the Collins contention has been abandoned on appeal by Brooks, W. Sparks, and V. Sparks. See Yousefi v. INS, 260 F.3d 318, 326 (4th Cir.2001) (concluding that petitioner abandoned argument on appeal raised for the first time in reply brief by failing to raise it in opening brief); Edwards v. City of Goldsboro, 178 F.3d 231, 241 n. 6 (4th Cir.1999) (concluding that claim not properly raised in appellant’s opening brief is deemed abandoned).

. Because the jury found that the Count 1 crack conspiracy involved less than 500 grams of cocaine (a quantity that falls within the default provision of 21 U.S.C. § 841(b)(1)(C)), we focus our analysis of the Collins contention on the quantity of crack (as opposed to cocaine) involved in the conspiracy and attributable to each defendant.

. Even if Brooks, W. Sparks, and V. Sparks had pursued a Collins contention on appeal, any Collins error as to them would have been harmless. This is so for Brooks and V. Sparks because they have conceded on appeal that they are personally responsible for 50 grams or more of crack. Brooks asserts that "the quantity of crack cocaine appropriately attributed to [him] is 50 grams, that quantity which was actually determined by the jury in this matter.” Br. of Appellants 24-25. Similarly, V. Sparks concedes that the "finding of guilty by the jury of conspiracy to distribute fifty (50) grams or more of crack cocaine is the only finding relating to drug weight that can be used in calculating [his] sentence.” Id. at 44. Additionally, because Informations were filed relating to prior convictions of Brooks and V. Sparks, their sentences of 360 months each were within the applicable enhanced maximum statutory penalty of 30 years, rendering any Collins error harmless. See 21 U.S.C. §§ 841(b)(1)(C), 851. Finally, the convictions of V. Sparks and W. Sparks on the Count 10 substantive offense of possession with intent to distribute 5 grams or more of crack places them under § 841(b)(1)(B) for statutory sentencing purposes. Their concurrent sentences of 360 months and 200 months, respectively, on each count of conviction, fall within the 5 to 40 year range provided by § 841(b)(1)(B), rendering harmless any Collins error as to the Count 1 crack conspiracy. See United States v. Ellis, 326 F.3d 593, 599-600 (4th Cir.2003) (concluding, under plain error review, that sentence in excess of statutory maximum authorized for one count did not affect substantial rights where defendant received valid equal or longer concurrent sentences on other counts). In fact, W. Sparks’s concurrent sentences of 200 months fall below the 20 year maximum in the default provision — § 841(b)(1)(C).

. In Promise, Judge Wilkins explained that an "aggravated drug trafficking offense” is one that "involves a specific threshold drug quantity,” which he in turn defined as those quantities of drugs a finding of which subjects a defendant to the statutory ranges contained in either § 841(b)(1)(A) or (b)(1)(B). See 255 F.3d at 152 n. 1.

. To the extent that Mathis and Witherspoon also contend that Collins requires the jury, rather than the sentencing judge, to determine, for Sentencing Guidelines purposes, drug quantities above the threshold statutory quantity, this contention is erroneous. Collins does not implicate the manner in which a district court calculates a defendant’s advisory Sentencing Guidelines range. Rather, it simply requires a jury to determine the specific quantity of drugs “attributable to” each conspiracy defendant on trial for the purpose of establishing the applicable statutory range under § 841(b). See infra note 20.

.In Pinkerton, the Supreme Court examined the potential criminal liability of one conspirator for the acts of another. The Court concluded that acts in furtherance of the conspiracy are "attributable to the others for the purpose of holding them responsible for the substantive offense,” when those acts are reasonably foreseen as a necessary or natural *558 consequence of the unlawful agreement. Pinkerton, 328 U.S. at 647-48, 66 S.Ct. 1180.

. With all respect to our friend Judge Niem-eyer, this opinion makes no new legal pronouncements — nor purports to make any. It simply applies Collins as controlling precedent in this circuit. We are thus perplexed by his suggestion that the majority is wrong in blindly following Collins. As our court has consistently recognized, "a panel of this court cannot over-rule, explicitly or implicitly, the precedent set by a prior panel of this court. Only the Supreme Court or this court sitting en banc can do that.” Scotts Co. v. United Indus. Corp., 315 F.3d 264, 271-72 n. 2 (4th Cir.2002) (internal quotation marks omitted); see also Collins, 415 F.3d at 311 (same); Richmond Med. Ctr. for Women v. Hides, 409 F.3d 619, 634 (4th Cir.2005) (Niemeyer, J., dissenting) (concluding that majority "unapo-logetically violates the well-established rule that one panel of this court may not overrule another”), vacated on other grounds sub nom. Herring v. Richmond Med. Ctr., - U.S. -, 127 S.Ct. 2094, 167 L.Ed.2d 810 (2007); McMellon v. United States, 387 F.3d 329, 333-34 (4th Cir.2004) (en banc) (holding that when two panel decisions conflict, earlier decision controls unless it has been overruled by subsequent en banc or Supreme Court decision); Longworth v. Ozmint, 377 F.3d 437, 448 n. 2 (4th Cir.2004) (concluding, in opinion authored by Judge Niemeyer, that panel was not entitled to reconsider applicable precedent decided by prior panel). In sum, we have neither misread nor misapplied Collins. Nor have we blindly adhered to it. With all respect, we have simply applied the Collins decision — controlling precedent of this Court — to the operative facts underlying this appeal.

. At oral argument, the Government conceded not only that Collins error occurred, but that all Defendants may have preserved the error through Mathis's objection. The Government focused on Mathis and Wither-spoon, however, contending that only those two defendants pursued the Collins contention on appeal (and that any error as to them was harmless). During argument, the Government also asserted that any Collins error as to V. Sparks and W. Sparks was harmless due to their separate convictions on the Count 10 substantive offense.

. We observe that the Government incorrectly asserts that Collins was decided prior to Booker. The Supreme Court decided Booker in January 2005 and we decided Collins in July 2005. Collins analyzed a pre-Booker sentence, while here, on the other hand, we are faced with the question of whether Collins is applicable to post-Booker sentences.

. Importantly, Collins commits to the jury the issue of threshold drug quantity for statutory purposes only. It does not require a jury to determine any drug quantities that may be attributable to a § 846 defendant for Sentencing Guidelines purposes. Thus, Collins does not impact the way defendant’s Sentencing Guidelines range is either calculated or considered. Although a sentencing court is free to calculate the advisory Guidelines range using facts that it finds by a preponderance of the evidence, including individualized drug quantities, it must do so within the confines of the applicable statutory range. For example, if a properly instructed jury determines the quantity of crack attributable to a § 846 defendant to be 5 grams or more, the sentencing court would be free to find, by a preponderance of the evidence, additional drug quantities for use in determining that defendant’s advisory Guidelines range. And, it would be permissible for such drug quantities to exceed the 5 grams already found by the juiy. The only limitation on the court's drug quantity finding would be that the resulting sentence is circumscribed by the statutory maximum of 40 years (and minimum of 5 years), which was fixed by the jury's threshold drug quantity finding. See § 841(b)(1)(B); Collins, 415 F.3d at 314.

. Although the Collins error explained above applied to all five Defendants, the error is harmless as to Brooks, V. Sparks, W. Sparks, and Witherspoon, for the reasons spelled out supra note 556.

. Although Mathis's sentence is infirm, his conspiracy conviction is sound. The jury found Mathis guilty of the Count 1 crack conspiracy, and his guilt on this offense is not dependent on a determination of the quantity of drugs involved. See Collins, 415 F.3d at 314.

. Brooks, Witherspoon, V. Sparks, and W. Sparks were all sentenced within their applicable statutory ranges. Mathis's sentence erroneously exceeded the applicable default statutory range (up to 20 years) under § 841(b)(1)(C), and we dispose of this issue in Part II hereof.

. Section 2D1.1(b)(1) provides for a two level enhancement to the offense level of certain drug offenses, ”[i]f a dangerous weapon (including a firearm) was possessed.” The application note corresponding to this enhancement adds that ”[t]he adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense.” USSG § 2D1.1(b)(1) cmt. n. 3.

. We further reject the contention that With-erspoon's criminal history category of IV over-represents his past criminal history.

. Moreover, even if we were to accept V. Sparks’s claim that the 1996 conviction was not relevant conduct, any resulting error was harmless. Because the court considered the 1996 conviction as relevant offense conduct, it did not assign any criminal history points for the conviction itself. Had the conviction been considered as unrelated conduct, however, the two points for relevant conduct while on probation would not have been assigned under section 4Al.l(d), but the 1996 conviction would have been a legitimate basis for an assignment of three criminal history points. See USSG § 4Al.l(a).